UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BROCK ALLMARAS, on behalf of others similarly situated,<br><br>                          Plaintiff,<br><br>v.<br><br>UNIVERSITY MECHANICAL & ENGINEERING CONTRACTORS, INC., and DOES 1 through 50, inclusive,<br><br>                       Defendants. | Case No.:  24-CV-01581-GPC-SBC<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>**[ECF No. 4]** |

Before the Court is Defendant's motion to dismiss, which was filed on September 11, 2024.  ECF No. 4.  Plaintiff opposed the motion, ECF No. 7, and Defendant filed a reply, ECF No. 8.  For the reasons below, the Court GRANTS Defendant's motion to dismiss.

## BACKGROUND

### I.  Procedural Background

On August 2, 2024, Plaintiff Brock Allmaras filed a complaint against University Mechanical & Engineering Contractors, Inc. on behalf of himself and "[a]ll current and

former non-exempt employees who worked for Defendants in California at any time from four years . . . prior to the filing of this action through date of class certification."  ECF No. 1-2 ("Compl.") ¶ 20.  On September 5, 2024, Defendant removed this case from state court, claiming that there was federal question jurisdiction under § 301 of the Labor Management Relations Act ("LMRA").  ECF No. 1.  Defendant timely moved to dismiss the complaint in its entirety, ECF No. 4, and the motion has now been fully briefed, *see* ECF Nos. 7, 8.

## II.  <u>Factual Background</u>

Defendant employed Plaintiff as an Apprentice Plumber from approximately July 2023 to April 2024.  Compl. ¶ 14.  Plaintiff and the putative class members were compensated by Defendant on an hourly basis.  Compl. ¶ 24.  Plaintiff, the putative class members, and Defendant are all parties to a collective bargaining agreement, which was most recently revised on July 1, 2017.  ECF No. 1-3 at 2; *see id.* at 34-101.

Plaintiff's various claims hinge on the general allegation that Defendant required "Plaintiff and the class members to complete work while off-the-clock, without compensation."  Compl. ¶ 25.  Plaintiff was allegedly expected to arrive to work 30 minutes early and begin working, and Defendant allegedly prohibited Plaintiff from logging this time on his timecard.  Compl. ¶ 26.  Further, Plaintiff was allegedly expected to respond to messages and phone calls regarding work-related matters while off-the-clock and was not allowed to log this time on this timecard, either.  Compl. ¶ 27.  Plaintiff also allegedly "routinely experienced missed, late, short, and interrupted meal periods due to pressure from Defendants to get their projects completed as soon as possible," Compl. ¶ 31, and due to pressure to work through his rest periods, Compl. ¶ 32.  Plaintiff allegedly incurred work-related costs without reimbursement, Compl. ¶ 38, such as "expenses incurred from cell phone usage required for the job or from obtaining

2

1    tools that were required for the job," Compl. ¶ 40.  Plaintiff further alleges that he

2    "requested copies of his timecards," which have not been provided.  Compl. ¶ 43.

3        Based on these allegations, Plaintiff asserts the following California state law wage

4    and hour claims on behalf of himself and the putative class members: (1) failure to pay all

5    minimum wages (Cal. Lab. Code §§ 1194, 1194.2, 1197); (2) failure to pay overtime

6    wages (*id.* §§ 510, 1194); (3) meal period violations (*id.* §§ 226.7, 512); (4) rest period

7    violations (*id.* §§ 226.7, 516); (5) failure to pay all paid sick leave wages (*id.* §§ 200, 218,

8    246 *et seq.*); (6) untimely payment of wages (*id.* §§ 204, 210, 218); (7) wage statement

9    violations (*id.* § 226); (8) waiting time penalties (*id.* §§ 201 *et seq.*); (9) failure to

10   reimburse business expenses (*id.* § 2802); (10) failure to provide records (*id.* §§ 226, 432,

11   1198.5); (11) violation of California's Unfair Competition Law ("UCL") (Cal. Bus. &

12   Prof. Code § 17200 *et seq.*).  Compl. ¶¶ 46-98.

## LEGAL STANDARDS

14       Federal Rule of Civil Procedure ("Rule") 12(b)(6) permits dismissal for "failure to

15   state a claim upon which relief can be granted."  Dismissal under Rule 12(b)(6) is

16   appropriate where the complaint lacks a cognizable legal theory or sufficient facts to

17   support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696,

18   699 (9th Cir. 1990).

19       A complaint may survive a motion to dismiss only if, taking all well pleaded

20   factual allegations as true, it contains enough facts to "state a claim to relief that is

21   plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*,

22   550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

23   content that allows the court to draw the reasonable inference that the defendant is liable

24   for the misconduct alleged."  *Id.*  "Threadbare recitals of the elements of a cause of

25   action, supported by mere conclusory statements, do not suffice."  *Id.*  In reviewing a

26   Rule 12(b)(6) motion, the Court accepts all facts alleged in the complaint as true and

27

28

1    draws all reasonable inferences in favor of the plaintiff.  *Al-Kidd v. Ashcroft*, 580 F.3d
2    949, 956 (9th Cir. 2009).

3                        **REQUEST FOR JUDICIAL NOTICE**

4        When ruling on a Rule 12(b)(6) motion to dismiss, a district court may "consider
5    certain materials—documents attached to the complaint, documents incorporated by
6    reference in the complaint, or matters of judicial notice—without converting the motion
7    to dismiss into a motion for summary judgment."  *United States v. Ritchie*, 342 F.3d 903,
8    908 (9th Cir. 2003).

9        Defendant requests judicial notice of the collective bargaining agreement, which is
10   attached to its notice of removal as Exhibit B to the Declaration of Douglas Kanaan In
11   Support of Defendant's Notice of Removal.  *See* ECF No. 1-3 at 33-101.  Plaintiff does
12   not oppose this request.  Courts routinely take judicial notice of CBAs at the motion to
13   dismiss phase, especially when reference to the CBA is required to resolve issues of
14   preemption.  *See, e.g., Hall v. Live Nation Worldwide, Inc.*, 146 F. Supp. 3d 1187, 1193
15   (C.D. Cal. 2015) (taking judicial notice of CBA that formed the basis for defendant's
16   argument that certain claims were preempted by the LMRA); *see also Lujano v.*
17   *Piedmont Airlines, Inc.*, --- F. Supp. 3d ----, 2024 WL 2873627, at *3 (C.D. Cal. May 16,
18   2024) ("the court takes judicial notice of the CBA because courts regularly take judicial
19   notice of collective bargaining agreements on a motion to dismiss when the documents
20   are not subject to reasonable dispute," and because "Plaintiff neither opposes Defendant's
21   request nor disputes the validity of the CBA").  Accordingly, Defendant's request for
22   judicial notice of the CBA is GRANTED, and the Court will consider the CBA in
23   deciding the motion to dismiss.

24                              **DISCUSSION**

25       Defendant advances several arguments in support of its motion to dismiss.  First,
26   Defendant argues that all of Plaintiff's claims, except Count Ten, are preempted under

27
28

4

LMRA § 301 pursuant to the two-step analysis detailed in *Burnside v. Kiewit Pacific Corporation*, 491 F.3d 1053 (9th Cir. 2007).  ECF No. 4-1 at 12-24.  Then, Plaintiff argues that any remaining claims which are not preempted under § 301 should be dismissed because they are subject to the CBA's grievance and arbitration provisions.  *Id.* at 25-33.

Plaintiff's opposition proceeds in two parts.  First, Plaintiff disputes whether any of his claims are preempted under § 301.  ECF No. 7 at 7-21.  Second, Plaintiff argues that Defendant's attempt to compel arbitration should be denied because the CBA's arbitration provisions are unconscionable.  ECF No. 7 at 21-27.[1]

The Court will address the parties' arguments in turn.

## I.    Section 301 Preemption

Defendant first argues that Plaintiff's claims, except Count Ten, are preempted under LMRA § 301.  Section 301(1) provides federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization."  29 U.S.C. § 185(a).  "The preemptive force of section 301 is so powerful as to displace entirely any state claim based on a collective bargaining agreement, and any state claim whose outcome depends on analysis of the terms of the agreement."  *Young v. Anthony's Fish Grottos, Inc.*, 830 F.2d 993, 997 (9th Cir. 1987).

The Ninth Circuit has applied a two-step test to determine whether a claim is preempted by § 301.  *Mellon v. Universal City Studios, LLC*, 625 F. Supp. 3d 1007, 1013 (C.D. Cal. 2022).  First, the court asks "whether a particular right inheres in state law or, instead, is grounded in a CBA."  *Burnside*, 491 F.3d at 1060.  "If the claim is founded directly on rights created by a CBA, preemption is warranted."  *Mellon*, 625 F. Supp. 3d

---

[1] Plaintiff does not dispute whether the claims are subject to arbitration under the CBA's terms.  He only seeks to attack the validity of the arbitration provisions.

at 1013 (citing *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)).  Second, the court asks "whether a state law right is 'substantially dependent' on the terms of a CBA." *Burnside*, 491 F.3d at 1060 (citing *Caterpillar*, 482 U.S. at 394).  The key question here is "whether the claim can be resolved by 'looking to' versus interpreting the CBA." *Burnside*, 491 F.3d at 1060 (internal citations omitted).  If the former, the claim is not preempted; if the latter, the claim is preempted.  *Id.*

### A. Count Two: Overtime Wages

California Labor Code § 510 entitles employees to overtime pay.  Meanwhile, Labor Code section 514 provides that:

> Sections 510 and 511 do not apply to an employee covered by a valid collective bargaining agreement if the agreement expressly provides for the wages, hours of work, and working conditions of the employees, and if the agreement provides premium wage rates for all overtime hours worked and a regular hourly rate of pay for those employees of not less than 30 percent more than the state minimum wage.

Defendants argue that Plaintiff's overtime wages claim is covered by the Labor Code section 514 exemption and is thus preempted under step one of the *Burnside* analysis. ECF No. 4-1 at 14.  If Defendants are correct, the right to overtime only exists under the CBA and the claim is therefore preempted under § 301.  *Id.*  Plaintiff responds that the CBA's terms do not meet section 514's requirements, and thus the claim is not preempted.  ECF No. 7 at 6-7.

Plaintiff does not dispute that the CBA provides for the wages, hours, and working conditions of the employees, ECF 1-3 at 39-43, 63-64, as well as premium wage rates for overtime hours, *id.* at 41.  What the parties do disagree on is whether the CBA provides a

6

regular hourly rate of pay for employees "of not less than 30 percent more than the state minimum wage." *See* ECF No. 4-1 at 15; ECF No. 7 at 12-13.

Defendant admits that the pre-apprentice classification earned less than 130% of the state minimum wage. ECF No. 1-3 at 4. But only 26 of the 288 UMEC employees covered by the CBA were ever in the pre-apprentice classification during the relevant period. *Id.* So, the vast majority of employees covered by the CBA—262 out of 288—earned more than 130% of the state minimum wage throughout the relevant period. *Id.* Defendants contend that this is sufficient to meet section 514's requirements. *See* ECF No. 4-1 at 15. But Plaintiffs argue that the CBA must "provide[] for the enhanced regular rate of pay for all covered employees," not just some of them. ECF No. 7 at 13. The resulting question is who does "those employees" refer to? Is it just the Plaintiff? Or is it all the employees covered by the CBA? To determine the answer, the Court must interpret the meaning of the statute.

When interpreting the meaning of a statute, "we start where we always do: with the text of the statute." *Bartenwerfer v. Buckley*, 598 U.S. 69, 74 (2023). If the text of the statute is unambiguous, the "judicial inquiry is complete." *Babb v. Wilkie*, 589 U.S. 399, 413 (2020). If the language is ambiguous, the court may consider the legislative history, the maxims of statutory construction, and public policy. *Even Zohar Constr. & Remodeling, Inc. v. Bellaire Townhouses, LLC*, 61 Cal. 4th 830, 838 (2015).

Section 514 provides that California's overtime provisions "do not apply to **an employee**" who is covered by a CBA if the CBA meets certain conditions. Cal. Lab. Code § 514 (emphasis added). First, the CBA must "expressly provide [] for the wages, hours of work, and working conditions of **the employees**." *Id.* (emphasis added). And second, the statute provides that the CBA must provide "a regular hourly rate of pay for **those employees** of not less than 30 percent more than the state minimum wage." *Id.* (emphasis added).

The statute references "employee" or "employees" in three phrases: (1) "an employee" to which the statute applies; (2) "the employees" for which the CBA must provide the wages, hours, and working conditions; and (3) "those employees," which must refer back to either (1) or (2). The difference between "an employee" and "the employees" is clear: "an employee" merely delineates *who* the exemption applies to and is in singular form, while "the employees" refers to plural "employees" for which the CBA must provide certain conditions. It is logical that "those employees" refers to "the employees" for which the CBA must provide wages, hours of work, and working conditions, as this is the statute's only other reference to plural "employees." Further, "those employees" and "the employees" are stated in the context of the statute's two requirements for the exemption to apply, while "an employee" describes who the statute applies to. Thus, "those employees" who must earn 130% of the state minimum wage are necessarily the same employees for which the CBA must provide the wages, hours, and working conditions.

The statute does not qualify "the employees" with any language narrowing who it applies to. And, without limitations, this language refers to all the employees for which the CBA would logically provide the wages, hours, and working conditions; that is, all employees who are covered by the CBA. Accordingly, the Court finds that the language of the statute is unambiguous, and that the CBA must provide the wages, hours, and working conditions of *all employees covered by the CBA* for section 514's exemption to apply.

While the lower courts are split on this question, the Court finds the cases adopting this interpretation to be more compelling. In *Huffman v. Pacific Gateway Concessions LLC*, the CBA met the pay requirement for some, but not all, of the employees covered by the CBA. 2019 WL 2563133, at *5 (N.D. Cal. June 21, 2019). The court there also noted the distinction between the singular and plural employee references on its way to

8

finding that "those employees" referred back to the statute's earlier use of "the employees." *Id.* As a result, the court held that "it was apparent from the statute's plain language that the CBA must satisfy Section 514's requirements with respect to all covered employees in order to render Section 510 inapplicable to any particular employee." *Id.* at *6.

The court in *Sarmiento v. Sealy, Inc.* agreed with the *Huffman* court's interpretation. 2019 WL 3059932, at *7 (N.D. Cal. July 12, 2019). The court noted the California legislature's decision to differentiate between a singular "employee" and plural "employees" in the latter clauses. *Id.* The court also reasoned that the legislature has retained the existing language in the statute, which indicates "an intent to maintain the status quo." *Id.* at *8. The court found public policy considerations to support this reading as well. *Id.* In particular, the court reasoned that the reading allows unionized employees to either bargain around section 510(a) or default to the statute's language, which is logical considering that the collective bargaining process is encouraged as a matter of public policy. *Id.* Lastly, the court considered that the California Supreme Court has emphasized that the Labor Code and wage orders should be liberally construed to "favor the protection of employees," and that exemptions from overtime provisions should be narrowly construed. *Id.* (citing *Troester v. Starbucks Corp.*, 5 Cal. 5th 829, 839 (2018) and *Ramirez v. Yosemite Water Co.*, 20 Cal. 4th 785, 794 (1999)). Based on these considerations, the Court concluded that the wage requirement must be "determined by reference to all of the covered employees." *Id.*

Courts in this District are in accord with this interpretation. *See Baltazar v. Ace Parking Mgmt., Inc.*, 2022 WL 1589297, at *3 (S.D. Cal. Mar. 14, 2022) ("Defendants have failed to demonstrate that the Ace Parking CBA provides a regular hourly pay rate of not less than 30 percent more than the state minimum wage as to ***all covered employees***. Rather, Defendants have only attempted to establish that the CBA provides

9

1  that rate of pay as to some of the covered employees.  This is insufficient.") (emphasis

2  added) (internal citations omitted); *Cranton v. Grossmont Hosp. Corp.*, 2022 WL

3  16572028, at *6 (S.D. Cal. Nov. 1, 2022) ("District courts have concluded post-*Curtis*

4  that a CBA does not meet Section 514's requirements if it does not meet the requirements

5  with respect to <u>all employees</u>.") (emphasis in original) (cleaned up).

6      The courts interpreting § 514 differently do so upon public policy considerations

7  rather than the text of the statute.  The court in *Huerta v. Doubletree Employer LLC*

8  articulated its interpretation most thoroughly.  2024 WL 890548, at *3 (C.D. Cal. Mar. 1,

9  2024).  There, the court acknowledged that the CBA did not meet the requirement for *all*

10 aggrieved employees, and that there was a split on this issue in the lower courts.  *Id.*  The

11 court reasoned that the legislative intent and public policy considerations behind

12 collective bargaining would be undermined if it held that "simply because the CBA does

13 not fulfill Section 514's requirements as to *some* employees, neither Section 504 nor

14 Section 301 would apply to *any* of the employees."  *Id.* (emphasis in original).  Similarly,

15 the court in *Sachs v. Pankow Operating, Inc.* reasoned that "the vast majority of

16 employee-categories in the CBA" met the requirement, and the fact that a fraction of

17 those covered did not meet the requirement should not foreclose the application of § 514

18 to other aggrieved employees.  2022 WL 489696, at *6 (C.D. Cal. Feb. 16, 2022).  But

19 these courts did not conduct analysis of the plain statutory text.  Instead, they presumed

20 that the legislature did not intend for CBAs to evade the exemption merely because they

21 fell just short of meeting § 514's requirements.  But the statute's clear language precludes

22 this interpretation because it does not indicate that fewer than all covered employees

23 would be sufficient.  "If the words themselves are not ambiguous, we presume the

24 Legislature meant what it said."  *Sarmiento*, 2019 WL 3059932 at *6.

25      Accordingly, based on the Court's interpretation of § 514, it finds that the CBA

26 here did not meet the requirements for the statute's overtime exemption.  Because the

24-CV-01581-GPC-SBC

exemption does not apply, the right to overtime does not "exist[] solely as a result of the CBA," and the claim is therefore not preempted under step one. *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1152 (9th Cir. 2019). Because Defendant does not argue that the claim is preempted under step two, the Court finds that the claim is not preempted under § 301.

### B. Count One: Minimum Wage

#### i. Step One

Defendant contends that, because the claims are "factually conjoined," Plaintiff's minimum wage claim is preempted for the same reasons that his overtime claim is preempted. ECF No. 4-1 at 16. Defendant puts forth no other arguments for preemption under the first step. Accordingly, because the Court holds that Plaintiff's overtime claim are not preempted under step one, neither so is Plaintiff's minimum wage claim.

#### ii. Step Two

Under step two, Defendant argues that the minimum wage claim is preempted because sufficient pay upon arrival at work, which is part of Plaintiff's claim, Compl. ¶ 26, is "addressed" in various sections of the CBA. ECF No. 4-1 at 16-17; *see* ECF No. 1-3 at 40, 44. Plaintiff disputes whether interpretation of the CBA is required to resolve a strictly state law claim. ECF No. 7 at 10-11.

The Court has reviewed the CBA sections Defendant points to, particularly sections 4.1.2, 4.1.3, and 5.3.3, and finds that there is no substantive dispute as to the language of these sections, and that these sections would, at most, be referred to in resolving the claim. The mere fact that the Court might consult the CBA or that some aspects of wages are addressed in the CBA does not turn the claim into one that requires interpretation of the CBA. *See Lopez v. S E Pipe Line Constr. Co.*, 2024 WL 171391, at *5 (S.D. Cal. Jan. 16, 2024) ("Defendant has not identified any substantive dispute over the language of the CBA that would require interpretation, and the Court therefore finds

24-CV-01581-GPC-SBC

that the minimum wage claims . . . are not substantially dependent on analysis of the CBA."); *see also Cramer v. Consol. Freightways Inc.*, 255 F.3d 683, 692 (9th Cir. 2001) ("[a] creative linkage between the subject matter of the claim and the wording of a CBA provision is insufficient; rather, the proffered interpretation argument must reach a reasonable level of credibility"). Accordingly, the minimum wage claim is not preempted under § 301.

### C. Count Three: Meal Breaks

Defendant argues that the Labor Code § 512(e) exemption applies, and thus Plaintiff has no state law meal break claim because it is preempted under step one. ECF No. 4-1 at 17. Plaintiff responds that Defendant does not meet § 512(e)'s requirements and that the claim otherwise does not require interpretation of the CBA, and thus it is not preempted. ECF No. 7 at 14-15.

If § 512(e)'s requirements are met, the statute's subdivisions requiring meal periods would not apply to Plaintiff and other aggrieved employees. Plaintiff is "employed in a construction occupation," Cal. Lab. Code § 512(f)(1), so subdivision (e) applies if the following conditions are satisfied:

> (1) The employee is covered by a valid collective bargaining agreement.
>
> (2) The valid collective bargaining agreement expressly provides for the wages, hours of work, and working conditions of employees, and expressly provides for meal periods for those employees, final and binding arbitration of disputes concerning application of its meal period provisions, premium wage rates for all overtime hours worked, and a regular hourly rate of pay of not less than 30 percent more than the state minimum wage rate.

1    *Id.* §§ 512(e)(1), 512(e)(2).

2    These are the same two conditions that must be met for the § 514 exemption to

3    apply with substantively similar language.  For the same reasons the Court articulated in

4    Section I, the Court finds that the CBA does not meet these requirements.

5    The claim is not otherwise preempted under step two of the analysis.  Plaintiff's

6    meal period claim arises solely out of state law, and much like Counts One and Two, it

7    does not require interpretation of the CBA.  *See Valles v. Ivy Hill Corp.*, 410 F.3d 1071,

8    1082 (9th Cir. 2005) ("[b]ecause the employees have based their meal period claim on

9    the protections afforded them by California state law, without any reference to

10    expectations or duties created by their collective bargaining agreement, the claim is not

11    subject to preemption") (cleaned up).  Accordingly, Plaintiff's meal breaks claim is not

12    preempted under § 301.

13    **D. Count Four: Rest Breaks**

14    Defendant argues that Plaintiff's rest breaks claim is preempted under step one

15    because of the exemption in Wage Order 16 § 11(D).  ECF No. 4-1 at 18.  Plaintiff

16    responds, in a conclusory manner, that Wage Order 16 § 11(E) is the only exemption in

17    the section.[2]  ECF No. 7 at 9.  The Court finds that the only exemption is provided under

18    § 11(E) and that Defendant has failed to demonstrate that it applies.

19    Wage Order 16 § 11 generally defines the rest periods that employers should

20    provide.  *See* Cal. Code Regs., tit. 8, § 11160(11).  Subsection (D) provides a remedy

21    when "an employer fails to provide an employee a rest period," but then states that "[i]n

22    cases where a valid collective bargaining agreement provides final and binding

23    mechanism for resolving disputes regarding enforcement of the rest period provisions, the

24

25

26    [2] Defendant acknowledges that §11(E) provides an exemption but does not argue that it

27    applies.  ECF No. 4-1 at 15.

28

13

24-CV-01581-GPC-SBC

collective bargaining agreement will prevail." *Id.* § 11160(11)(D).  The Court interprets this to mean that an employer need not provide the stated remedy if the CBA provides its own final and binding dispute resolution mechanism.  But it does not fully exempt an employer from compliance with the rest of Wage Order 16 § 11 if such a mechanism exists.  In fact, it is § 11(E) that provides such a full exemption, not § 11(D).[3]

The cases Defendant cites in support of its proposition also recognize as much. Defendant cites *Thieroff v. Marine Spill Response Corp.*, 2022 WL 2965393 (C.D. Cal. June 6, 2022) and *Zayerz v. Kiewit Infrastructure West*, 2018 WL 582318 (C.D. Cal. Jan. 18, 2018) in support of its argument.  In *Thieroff*, the court found that Plaintiffs "cannot state a claim under section 11 of Wage Order 16" because "the CBAs provide equivalent protection for rest breaks," as is required by § 11(E).  2022 WL 2965393 at *5. Similarly, in *Zayerz*, the court found that the plaintiff's rest period claims were exempted because plaintiff was "covered . . . by a valid CBA that offered equivalent protection as that found [in] Wage Order No. 16."  2018 WL 582318 at *4.  Accordingly, courts clearly interpret § 11(E), rather than § 11(D), to be the subsection that provides an exemption.

While § 11(E) provides an exemption, Defendant makes no argument that the CBA provides equivalent protections to Wage Order 16, which would trigger the exemption. *See* ECF No. 4-1 at 18-20 (absence).  And Plaintiff argues that no such proviso exist in the CBA.  ECF No. 7 at 9.  The Court thus finds that no exemption applies, and that Plaintiff's rest period claim is not preempted under § 301.

---

[3] Section 11(E) states, "[t]his section shall not apply to any employee covered by a valid collective bargaining agreement if the collective bargaining agreement **provides equivalent protection**."  Cal. Code. Regs., tit. 8, § 11160(11)(E) (emphasis added).

### E. Count Five: Sick Leave

Defendant argues that there are two exemptions that apply to Plaintiff's sick leave claim: Labor Code § 245.5(a)(1) and § 245.5(a)(2).  ECF No. 4-1 at 20.  Plaintiff argues that a § 245.5(a) exemption does not apply because the CBA does not provide an hourly rate of "not less than 30 percent more than the state minimum wage rate" for all employees.  ECF No. 7 at 16-17.  For the reasons described in Section I, *supra*, the Court finds that the CBA does not meet the 130% of the state minimum wage requirement that is found in both possible § 245.5 exemptions.  *See Div. of Lab. Standards Enf't v. Save Mart Supermarkets*, 2022 WL 837206, at *6 (C.D. Cal. Mar. 21, 2022) ("the section 245.5(a)(1) exemption, like the section 514 exemption, requires a collective bargaining agreement that provides for the enhanced regular rate of pay for all covered employees").  As such, the exemptions do not apply.

Defendant also briefly argues that the paid sick leave claim is preempted because it "seeks additional paid sick leave which can only be provided by the CBA-created trust."  ECF No. 4-1 at 21.  In support of this contention, Defendant cites to *Rodriguez v. Gonsalves & Santucci, Inc.*, which addressed a CBA that provided vacation benefits administered by a board of trustees.  2022 WL 161892, at *5 (N.D. Cal. Jan. 18, 2022).  However, the court there was discussing the preemption of a claim for vested vacation time upon termination under Labor Code § 227.3, which provides a clear exemption for the claim.  *Id.  Rodriguez* is thus inapposite here, because no such exemption exists for this claim, and Defendant puts forth no other arguments for this proposition.  Accordingly, the paid sick leave claim is not preempted under § 301.

### F. Count Six: Untimely Payment of Wages

Defendant argues that Plaintiff's claim for untimely payment of wages is preempted by Labor Code § 204(c).  ECF No. 4-1 at 21-22.  Plaintiff disputes this

24-CV-01581-GPC-SBC

contention, arguing that an explicit waiver of the relevant Labor Code sections is required, and that there is no such waiver here.  ECF No. 7 at 17-18.

Labor Code § 204(c) provides that "when employees are covered by a collective bargaining agreement that provides different pay arrangements, those arrangements shall apply to the covered employees."  Courts in this Circuit have consistently held that when § 204(c)'s requirements are met, claims under § 204, such as this one, are preempted. *See Hall*, 146 F. Supp. 3d at 1203 (finding claim preempted where a claim met § 204(c)'s requirements because, in such a situation, the "CBA governs."); *Ariola v. Raytheon CA Techs. Corp.*, 2023 WL 8764296, at *9 (C.D. Cal. Sept. 6, 2023) ("the Court is satisfied that section 204(c) applies.  Therefore, Plaintiff's section 204 claim exists by virtue of the CBA and is preempted"); *Schwanke v. Minim Prods., Inc.*, 2021 4924772, at *5 (C.D. Cal. May 24, 2021) (holding that, because section 204(c)'s requirements are met, "Plaintiff's timely payment claim under section 204 therefore exists solely as a result of the CBA and is preempted by section 301").

Here, the CBA clearly provides for weekly wage payment, ECF No. 1-3 at 40, which differs from the bimonthly payment structure provided for in § 204(a).  Thus, the CBA "provides different pay arrangements," and "those arrangements shall apply to the covered employees."  Cal. Lab. Code § 204(c); *see Tolentino v. Gillig, LLC*, 2021 WL 121193, at *3 (N.D. Cal. 2021) (holding that because the "CBA provides for . . . the payment of wages on a weekly basis . . . [Plaintiff's] right to the timely payment of wages exists solely as a result of the CBA," and the claim is preempted) (cleaned up).

Plaintiff disputes this conclusion and argues that, because the court in *Hall* noted the clear waiver of rights under § 204, 146 F. Supp. 3d at 1203, such a waiver is required for preemption.  ECF No. 7 at 17-18.  But the court in *Hall* did not hold that such a waiver is *required*, rather, it reasoned that the rights in § 204 are waivable, and that a clear waiver in the CBA was sufficient to satisfy § 204(c).  146 F. Supp. 3d at 1203.  The

plain language of § 204(c) makes clear that a different pay arrangement is also sufficient to waive the rights.  It is also telling that many courts in this Circuit have found claims preempted without a clear waiver.  *See Ariola*, 2023 WL 8764296 at *9 (finding CBA's biweekly payment structure to satisfy § 204(c) without mention of a waiver); *Schwanke*, 2021 4924772 at *5 (finding CBA's weekly payment structure to satisfy § 204(c) without mention of a waiver); *Paulk v. Student Transp. Of Am., Inc.*, 2024 WL 3291591, at *4 (C.D. Cal. July 3, 2024) (finding CBA's biweekly payment structure to satisfy § 204(c) without mention of a waiver); *Bradford v. Pro. Tech. Sec. Servs. Inc. (Protech)*, 2020 WL 2747767, at *4 (N.D. Cal. May 27, 2020) (finding CBA's weekly payment structure to satisfy § 204(c) without an explicit waiver).

Thus, because the CBA provides different pay arrangements than those provided in § 204(a), the claim exists solely under the CBA, and it is preempted under § 301.

### G. Count Nine: Failure to Reimburse Business Expenses

Defendant argues that Plaintiff's expense reimbursement claim should be preempted under step two because "the CBA contains provisions that touch on the specifics of the alleged expense reimbursement issue."  ECF No. 4-1 at 23.  Plaintiff responds that "this allegation is rooted in state law and does not require CBA interpretation."  ECF No. 7 at 20.

Plaintiff brings his claim pursuant to California Labor Code § 2802, which states, in relevant part, that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties."  Cal. Lab. Code § 2802(a).  Thus, Plaintiff merely alleges that Defendant failed to satisfy its obligations under this state law.  Compl. ¶ 83.  Plaintiff does not allege that "the terms of the [CBA] violate state law or raise any dispute as to the interpretation of the [CBA.]  Thus, resolution of [this claim] does not require interpreting the [CBA.]"  *Gonzalez Quiroz v. Coffman Specialties, Inc.*, 2020 WL

7258725, at *4 (S.D. Cal. Dec. 10, 2020).  Accordingly, Plaintiff's expense reimbursement claim is not preempted under § 301.

## H. Remaining Claims

Defendant's only argument that the three remaining claims (Counts Seven, Eight, and Eleven) are preempted is that they are derivative of Plaintiff's other claims, which it argues are preempted.  ECF No. 4-1 at 22.  Because they are derived from the other claims, Defendant argues that they must also be preempted.  *Id.*  Plaintiff disputes that these claims should be preempted on these grounds, and cites to *Curtis*, where the court remanded the derivative claims instead of finding that they were preempted.  *Id.*; *Curtis*, 913 F.3d at 1156.

The remaining claims are derived from eight other claims.  Of those eight claims, one is preempted under § 301 and the other seven are not.  The Court is not convinced that, in such a situation, the derivative claims should be preempted based on the preemption of a singular claim from which they are derived.  And Defendant cites no case law holding that derivative claims should be preempted in this situation.  Accordingly, the derivative claims are not preempted under § 301.

## I. Dismissal of Plaintiff's Count Six

Once a state law claim has been found to be preempted under § 301, "that claim must either be treated as a § 301 claim, or dismissed as pre-empted by federal labor-contract law."  *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1034 (9th Cir. 2016) (quoting *Allis-Chambers Corp. v. Lueck*, 471 U.S. 202, 220 (1985)).  An employee can maintain a preempted claim "if she can demonstrate that her remedies under the . . . CBA were exhausted . . . or that her union breached its duty of fair representation in failing to do so."  *Kobold*, 832 F.3d at 1036; *see also id.* at 1034.

Defendant argues that any preempted claim should be dismissed because Plaintiff did not exhaust his remedies under the CBA or allege that the union breached its duty of

fair representation.  ECF No. 4-1 at 23-24.  Instead of responding to *Kobold*, Plaintiff briefly argues that the Court cannot compel arbitration here, that there was no waiver of statutory rights, and that Defendant waived its right to arbitrate the dispute.  ECF No. 7 at 20-21.

To avoid dismissal here, Plaintiff must have alleged that he exhausted his remedies under the CBA or that the union breached its duty of fair representation.  *Kobold*, 832 F.3d at 1034.  Plaintiff has alleged neither.  Accordingly, the only remaining option for the Court is to dismiss the claim as preempted.  *Id.*  The motion to dismiss Count Six is thus GRANTED.[4]

## II.    **Arbitration**

### A. The CBA's Arbitration Provision

"As a general rule in cases to which federal law applies, federal labor policy requires that individual employees wishing to assert contract grievances must attempt use of the contract grievance procedure agreed upon by employer and union as the mode of redress."  *Republic Steel Corp. v. Maddox*, 379 U.S. 650, 652 (1965).  And courts generally cannot interfere when a union and employer agree to include an arbitration provision in a collective-bargaining agreement.  *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247, 257 (2009).  When a CBA "contains an arbitration clause, there is a presumption of arbitrability in the sense that '[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not

_____

[4] The Court has subject matter jurisdiction over Count Six because it is preempted under § 301.  *See Curtis*, 913 F.3d at 1152 ("a civil complaint raising claims preempted by § 301 raises a federal question that can be removed to a federal court").  Because each of Defendant's other claims is "intertwined with [Count Six] such that they are a part of the same case or controversy, the Court will exercise supplemental jurisdiction to adjudicate these claims as well."  *Braswell v. AHMC San Gabriel Valley Med. Ctr. LP*, 2022 WL 707206, at * 4 (C.D. Cal. Mar. 8, 2022) (citing 28 U.S.C. § 1367).

1  susceptible of an interpretation that covers the asserted dispute.'"  *AT & T Techs., Inc. v.*

2  *Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986) (quoting *United Steelworkers of*

3  *Am. V. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960)).

4      Here, Defendant argues that any claims that are not dismissed on § 301 grounds

5  should be subject to arbitration.  ECF No. 4-1 at 25-33.  Plaintiff ignores these arguments

6  in his opposition, and instead opts to argue that the CBA is unconscionable.  ECF No. 7

7  at 21-27.

8      Defendant specifically argues that all of Plaintiff's claims are subject to arbitration

9  under Section B.4.1.1 of the CBA, *see* ECF No. 1-3 at 54.  Section B.4.1.1 reads:

10          all employee disputes concerning violations of or arising under

11          Wage Order 16 . . ., the California Labor Code Sections

12          identified in California Labor Code section 2699.5 as amended,

13          the California Private Attorneys General Act (Labor Code

14          section 2698, et seq.), and federal, state and local law concerning

15          wage-hour requirements, wage payment and meal or rest periods,

16          including claims arising under the Fair Labor Standards Act . . .

17          shall be subject to and must be processed by the employee

18          pursuant to the procedures set forth in this Appendix as the sole

19          and exclusive remedy.

20  *Id.*  And Section B.4.1.2 provides that such statutory disputes must initially go

21  through the CBA's grievance and arbitration process, *id.*, which is outlined in Section B.2

22  of the CBA, *id.* at 51-52.  Accordingly, if Defendant is correct that Plaintiff's claims are

23  covered by Section B.4.1.1, then they must be arbitrated.

24      Defendant argues that several of Plaintiff's claims arise under Wage Order 16, and

25  thus are subject to arbitration under Section B.4.1.1 of the CBA.  ECF No. 7 at 27-29, 31-

26  32.  The minimum wage claim (Count One) is covered by Wage Order 16 section 4, Cal.

Code Regs., tit. 8, § 11160(4), the overtime wage claim (Count Two) is covered under Wage Order 16 section 3, *id.* § 11160(3), the meal breaks claim (Count Three) is covered under Wage Order 16 section 10, *id.* § 11160(10), the rest breaks claim (Count Four) is covered under Wage Order 16 section 11, *id.* § 11160(11), the failure to provide records claim (Count Ten) is covered under Wage Order 16 section 7, *id.* § 11160(7).  Because these claims "arise under" Wage Order 16, they are subject to the CBA's grievance and arbitration procedures.

Defendant further argues that several of Plaintiff's other claims are "identified in California Labor Code section 2699.5," ECF No. 1-3 at 54, and thus also subject to arbitration under Section B.4.1.1 of the CBA.  ECF No. 4-1 at 30-32.  The waiting time penalties claim (Count Eight) is brought pursuant to Labor Code §§ 201-03, which are all enumerated in Labor Code § 26995(a).  This claim is thus subject to the CBA's grievance and arbitration procedures.  The wage statement violations claim (Count Seven) is brought pursuant to Labor Code § 226, while the expense reimbursement claim (Count Nine) is brought pursuant to Labor Code § 2802.  ECF No. 4-1 at 30-32.  Both sections were enumerated in the version of Labor Code § 26995(a) that was in effect on July 1, 2017, when the CBA was most recently revised, *see* ECF No. 1-3 at 34, but are no longer enumerated in the statute.  However, because "statutes do not apply retroactively unless the Legislature clearly indicated otherwise," *Phillips v. St. Mary Reg'l Med. Ctr.*, 96 Cal. App. 4th 218, 229 (2002), the Court will apply the version of the statute in effect at the time of contracting.  Accordingly, these claims are also subject to the CBA's grievance and arbitration procedures.

Defendant argues that the paid sick leave wages claim (Count Five) is covered by Section B.4.1.1 of the CBA because it alleges a failure to provide a sufficient *rate* for sick leave, and thus arises under a state law concerning "wage payments."  ECF No. 4-1 at 29-30.  Defendant is correct that the factual basis for Plaintiff's claim is the pay *rate*,

1    *see* Compl. ¶¶ 66-67, and it is plausible that such a dispute could concern "wage

2    payments," as listed in the CBA's arbitration provision.  Thus, because the provision is

3    "susceptible of an interpretation that covers the asserted dispute,'" *AT & T*, 475 U.S. at

4    650, the presumption of arbitrability applies.   This claim is therefore subject to

5    arbitration.

6          Lastly, Defendant argues that the UCL claim (Count Eleven) is subject to

7    arbitration because it is derivative of the underlying claims, which are also subject to

8    arbitration.  Plaintiff does not respond to this argument.  The Court agrees that the

9    derivative UCL claim should also be arbitrated, as the claims from which it derives are all

10    subject to arbitration.  *See Reyna v. WestRock Co.*, 2020 WL 5074390, at *11-12 (N.D.

11    Cal. Aug. 24, 2020) (dismissing UCL claim because it "relies on and is derivative of

12    [plaintiff's] minimum wage, overtime, meal/rest-period, and unreimbursed business

13    expenses claims").

14          Accordingly, all of Plaintiff's claims, except for Count Six, which was dismissed

15    on other grounds, are subject to arbitration pursuant to the CBA.

16          **B. Unconscionability**

17          Instead of arguing that the claims are not subject to arbitration, Plaintiff argues that

18    the Court should not compel arbitration because the CBA's arbitration terms are

19    unconscionable under California law.  ECF No. 7 at 21-27.  Defendant, in its reply brief,

20    primarily argues that state law unconscionability principles do not apply to CBAs, but

21    also briefly responds to some of Plaintiff's more specific contentions.  ECF No. 8 at 2-4.

22          Defendant's contention that state law unconscionability principles do not apply in

23    this context is incorrect.  Section 2 of the FAA "provides that a court may strike or limit

24    an arbitration provision on 'such grounds as exist at law or in equity for the revocation of

25    any contract.'"  *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016) (quoting

26    9 U.S.C. § 2).  Common contract defenses, including unconscionability, can apply to

27

28

invalidate arbitration agreements. *AT&T Mobility LLC*, 563 U.S. 333, 339 (2011). Unconscionability has both a "procedural" and a "substantive" element, and they must both be present for a court to find that the agreement is unconscionable. *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (2000). However, they need not be present to the same degree; rather, a sliding scale analysis applies. *Id.*

Procedural unconscionability focuses on oppression and surprise. *A & M Produce Co. v. FMC Corp.*, 135 Cal. App. 3d 473, 486 (1982). There is oppression when there is an "inequality of bargaining power which results in no real negotiation and 'an absence of meaningful choice." *Id.* (quoting *Williams v. Walker-Thomas Furniture Co.*, 350 F.2d 445, 449 (D.C. Cir. 1965)). And there is surprise when terms of the bargain are hidden amid a form contract "drafted by the party seeking to enforce the disputed terms." *A& M Prod.*, 135 Cal. App. 3d at 486.

Plaintiff does not argue that there was any element of surprise here. Rather, Plaintiff argues that, because the arbitration agreement was adhesive, it is oppressive. Specifically, Plaintiff argues that he did not have an opportunity to negotiate or opt-out of the terms of the CBA or its arbitration provision. ECF No. 7 at 23-24. But the union negotiated the CBA on behalf of its members—present and future. And "[t]he NLRA was enacted to remedy the inequality of bargaining power between employees . . . and employers." *Cal. Grocers Ass'n v. City of Los Angeles*, 52 Cal. 4th 177, 195 (2011). Here, the CBA was not a standardized contract drafted by the employer, instead it was mutually arrived at after a negotiation process. Moreover, the employer did not have superior bargaining power given that it was negotiating with a union made up of hundreds of employees. As such, the Court finds that the CBA or its arbitration provision did not involve oppression or surprise, and thus they are not procedurally unconscionable. Because this is one of the required elements of unconscionability, the Court rejects Plaintiff's unconscionability argument.

24-CV-01581-GPC-SBC

Accordingly, all of Plaintiff's claims, apart from Count Six, which was dismissed under § 301, are subject to the CBA's valid arbitration provision. The Court therefore GRANTS the motion to dismiss these claims and orders arbitration of the claims pursuant to the CBA's terms.

## III. Leave to Amend

Plaintiff has not requested leave to amend in his opposition papers. While "the court should freely give leave when justice so requires," Fed. R. Civ. P. 15(a)(2), it need not do so where the amendment would be futile, *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Here, amendment would be futile because the grounds to dismiss are strictly legal. The Court does not believe that any additional facts would change its conclusion that the claims are arbitrable. Therefore, the Court will not grant the Plaintiff leave to amend. *See Camarillo v. Balboa Thrift and Loan Ass'n*, 2021 WL 409726, at *15 (S.D. Cal. Feb. 4, 2021) (finding amendment would be futile after dismissing claims in favor of arbitration because "no set of facts could avoid" the conclusion that arbitration was warranted); *LegalForce RAPC Worldwide, P.C. v. LegalZoom.com, Inc.*, 2018 WL 2013552, at *1 (N.D. Cal. Apr. 30, 2018) (denying leave to amend where plaintiff failed to show that proposed amendments would "take any of the stayed claims outside the scope of the arbitration agreement").

## CONCLUSION

For the above reasons, the Court GRANTS Defendant's motion to dismiss in its entirety. Plaintiff's complaint is DISMISSED without leave to amend.

**IT IS SO ORDERED.**

Dated: November 20, 2024

Hon. Gonzalo P. Curiel
United States District Judge

24